# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WANDA RIVERA,** **Plaintiff** | 3:09cv1558 |
| v. | (Judge Munley) |
| **COUNTY OF MONROE (Monroe County Correctional Facility) and OWEN THOMAS, Individually and as Captain, Monroe County Correctional Facility, Defendants** | |

## MEMORANDUM

Before the court for disposition is the defendants' motion for summary judgment (Doc. 16). Having been fully briefed, the motion is ripe for disposition.

## BACKGROUND

This case involves claims of disability discrimination and sexual harassment relating to the plaintiff's employment at the Monroe County Correctional Facility. Plaintiff Wanda Rivera ("Rivera") was a correctional officer ("CO") at the Monroe County Correctional Facility ("MCCF") from July 20, 1998 until September 17, 2008. (Defs.' Statement of Undisputed Material Facts ¶ 1 (Doc. 18)). The MCCF is a jail owned by Defendant Monroe County, though the county notes that the prison is operated by the Monroe County Prison Board. (Id. ¶ 3). Defendant Captain Owen Thomas ("Thomas") was the Chief of Security at the MCCF during the relevant time period. (Id. ¶ 2).

The MCCF has a policy which sets grooming standards for its male and female COs. (Id. ¶ 6). The policy in place when Rivera worked at the MCCF stated that, for female COs, "[h]air shall be neatly groomed, and shall not present a ragged, unkempt or extreme appearance. Hair that is longer than

shoulder length must be pulled back and then tied." (Id. ¶ 12).[1]

Throughout the relevant time period Rivera had long hair that reached the middle of her back, but wore it tied back in a loose bun while working. (Id. ¶¶ 15, 16; Pl.'s Statement of Material Facts ¶ 17 (Doc. 20)). Rivera suffered from migraine headaches, blurred vision, dizziness, sensitivity to light, and hair loss when she pull her hair back into a tight bun. (Doc. 20 ¶¶ 21, 25). Rivera indicates that other symptoms of tightly pulling her hair back are her "inability to sleep normally, concentrate, work, or carry out basic activities of daily living." (Id. ¶ 15).

Rivera indicates that, during her tenure at the MCCF, female COs had not always been required to wear their hair up. (Doc. 20 ¶ 20). The hair policy was not enforced until a new warden– Warden Kesling– took over. (Id.) When Rivera tied her hair up she noticed her hair began falling out and she began having headaches. (Id.) Rivera obtained a medical excuse from her dermatologist, Dr. Paul Long, in November 2007. (Id.) Rivera's medical excuse allowed her to wear her hair tied back in a loose bun while working at the MCCF. (Doc. 20 ¶ 17). Rivera was also given work in the control center where her hair would be less of a safety concern. (Doc. 18 ¶ 19; Doc. 20 ¶ 19). Rivera's supervisors considered her an excellent employee. (See Doc. 20 ¶ 11).

On June 18, 2008, Thomas conducted a training session during the morning report. (Doc. 18 ¶¶ 30, 31). Thomas decided to train the COs on pat-down searches because he had observed a CO improperly conduct a

---

[1] On October 20, 2008, after Rivera left the MCCF, the grooming policy was revised to state, "[h]air shall be neatly groomed and worn in a manner so that it does not extend beyond the bottom of the uniform collar. . . . Hair shall be secured close to the head, i.e., ponytail or loose bun. The ponytail should not touch or pass the uniform collar." (Doc. 20 ¶ 9).

search. (Doc. 18 ¶ 31). A pat-down search is a clothed search that does not involve touching an inmate's genitals or buttocks. (Doc. 18 ¶¶ 36, 37). As a CO, Rivera was responsible for supervising male inmates and might need to pat-down a male inmate during an emergency. (Doc. 18 ¶¶ 33, 35). However, Rivera had never seen a male CO pat down a female, or vice versa, in her ten years at the MCCF. (Doc. 20-2 at 273). According to CO Joseph Dougher, this training session was the first time he had seen a female CO forced to pat down a male at the MCCF. (Dougher Dep. (Doc. 20-2 at 138)). Similarly, Lieutenant Joseph Kramer had not seen a female pat down a male in his twenty-two years as a CO. (Kramer Dep. (Doc. 20-2 at 166)).

During the training session female CO Louise Kramer volunteered to perform a pat-down search of Thomas. (Doc. 18 ¶ 40). Subsequently, Thomas asked female COs Lisa Weizman and Melanie Desplat to perform a training scenario together. (Doc. 18 ¶ 41).

When Thomas called on Rivera to perform a pat-down search upon his person, she balked and looked to her supervisors to intervene, but ultimately conducted the training exercise without overt complaint. (Doc. 20 ¶ 43; Rivera Dep. (Doc. 20-2 at 288)). Rivera performed the search without objection because she felt refusal would have been insubordination. (Doc. 20-2 at 291). The search included Thomas's "arms, down his back, front of his chest, along the belt of his pants, the zipper part of the pants," groin, back pants pockets over the buttocks, down the legs, and his shoes. (Id. at 293 - 295). Rivera heard comments to the effect that Thomas was getting "felt up" and she felt traumatized and humiliated. (Id. at 295 - 296).

Rivera claims she spoke afterwards with her supervisor, Sergeant Start, to complain about the incident. (Doc. 20 ¶ 43; Doc. 20-2 at 297). She also claims she spoke with her union representative three days after the incident, but was told that the seventy-two-hour window for filing a grievance had

3

elapsed. (Doc. 20 ¶ 43). Finally, she claims she left messages for Warden Mauro and tried to meet with him in his office, but was unsuccessful. (Id.) The defendants claim that Rivera never raised her allegations of sexual harrassment until one month after she left the MCCF. (Doc. 18 ¶ 43).

Approximately one month after the training incident, in mid-July of 2008, Rivera was told that her prior medical excuse from her dermatologist was too general and needed specification. (Doc. 20-2 at 303). While Rivera was waiting for re-certification from her family physician Dr. Timothy Brown, Lieutenant Frabel told Rivera that if she did not put her hair up she would be sent home. (Doc. 20 ¶¶ 20, 21; Doc. 20-2 at 310). Rivera put her hair up, but could not work longer than two hours. (Doc. 20 ¶ 21). On August 18, 2008, Rivera gave Thomas a re-certification request for an accommodation regarding her hair, which Thomas forwarded to Bonnie Ace-Sattur ("Ace-Sattur"), the Director of Monroe County Human Relations. (Doc. 20 ¶ 18; Doc. 18 ¶ 22). Ace-Sattur neither approved or denied the request for a re-certification of Rivera's accommodation. (Doc. 20 ¶ 19). Ace-Sattur informed Warden Mauro that he could either have Rivera put her hair up, have Rivera cut her hair, or remove Rivera from her position. (Id.) Rivera claims she was constantly warned that her hair was in violation of MCCF policy and sent to the control area to work. (Doc. 20 ¶ 21).

Rivera's employment at the MCCF ended on September 17, 2008. (Doc. 18 ¶ 1). The defendants characterize this event as a resignation, while Rivera claims she was constructively discharged. (Compare Doc. 18 ¶ 1 with Doc. 20 ¶ 1). Rivera's resignation letter of September 2, 2008 states:

> I regret to inform you that as of September 17th, 2008 I will be terminating my employment with the Monroe County Correctional Facility. I appreciate the opportunities presented to me in my stay here. I enjoyed working with the excellent team on second shift. I was looking forward to a long career at MCCF, unfortunately unforseen circumstances have dictated

> otherwise.

(Resignation Letter (Doc. 20-2 at 234)).

Rivera filed her complaint on August 13, 2009. (Doc. 1). Her complaint raises five claims: a claim of disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, against Monroe County (Count I); sexual harassment under Title VII of the Civil Rights Act, 42 U.S.C.S. §§ 2000e, et seq. against Monroe County (Count II); a claim under 42 U.S.C. § 1983 for violation of her rights under the Equal Protection Clause of the Fourteenth Amendment against Owen Thomas in his individual and official capacities (Count III); a claim under 42 U.S.C. § 1983 based on Monroe County's policy or custom of sexual harassment and discrimination, failure to train, failure to supervise (Count IV); and a claim under 42 U.S.C. § 1983 for violation of her First Amendment rights against Monroe County (Count V). (Doc. 1).

The defendants answered the complaint on September 29, 2009 and the parties engaged in discovery. (Doc. 9). On April 20, 2010 the defendants filed the instant motion for summary judgment, bringing the case to its present posture. (Doc. 16).

**JURISDICTION**

The court has federal question jurisdiction over this case brought under Title VII of the Civil Rights Act, the Americans with Disabilities Act and section 1983. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting district courts jurisdiction over civil actions brought to redress deprivations of constitutional or statutory rights by way of damages or equitable relief).

**LEGAL STANDARD**

Before the court is the defendants' motion for summary judgment.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**DISCUSSION**

The defendants' motion for summary judgment seeks to dismiss Counts I through IV of Rivera's complaint. We will address each count in order.

6

**Count I: ADA against Monroe County**

Rivera claims that Monroe County discriminated against her in violation of the Americans with Disabilities Act ("ADA"). The County argues that (1) Rivera was not "disabled" within the meaning of the ADA because she could have simply cut her hair and that (2) even if her headaches constituted a disability, she quit before the County could offer her a reasonable accommodation.

Under the ADA an employer may not discriminate against a "qualified individual with a disability" based upon that individual's physical or mental impairments. 42 U.S.C. § 12112. "To make out a prima facie case under the ADA, a plaintiff must establish that s/he (1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an 'adverse employment decision' as a result of that disability." Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001) (citing Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3d Cir. 1998) (en banc)).

Under the ADA, a person is considered disabled if he has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment. . . ." 42 U.S.C. § 12102(1). The County argues that Rivera is not disabled by her headaches because she could simply cut her hair. Rivera claims that she has a record of an impairment and, alternatively, that Monroe County regarded her as having such an impairment.

In order to bring a claim based on a record of impairment a plaintiff must show a history of a condition that substantially limits a major life activity and that the employer based its employment decision on that record. Eshelman v. Agere Sys., Inc., 554 F.3d 426, 434 (3d Cir. 2009). Rivera claims that she has a record of suffering from migraine headaches, blurred vision, dizziness,

7

hair loss, and sensitivity to light and sound when she ties her hair back tightly, and that this physical impairment substantially limits her major life activity of working.

"With regard to working, the regulations state that an individual is 'substantially limited' if a significant restriction limits a person's 'ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" Eshelman, 554 F.3d at 435 (quoting 29 C.F.R. § 1630.2(j)(3)(I)); see also Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 523 (1999). "To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." Sutton v. United Airlines, Inc., 527 U.S. 471, 492 (1999).[2]

Here, Rivera alleges that she could not tie her hair tightly behind her head without experiencing debilitating headaches. She states that when she was forbidden from tying her hair loosely she attempted to work with her hair tied tightly but was only able to work for two hours before having to go home.

---

[2] The ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 expanded the scope of the ADA's definition of disability, overturning the limitations of Sutton v. United Air Lines, 527 U.S. 471 (1999). This Act, which went into effect January 1, 2009, does not state that it is to be applied retroactively and we presume it should not be. See Fernandez -Vargas v. Gonzalez, 548 U.S. 30, 37 (2006) (statutes are not given retroactive effect absent explicit language or necessary implication); Supinksi v. United Parcel Service, Inc., 2009 WL 113796, *5 n.6 (M.D. Pa. Jan. 16, 2009) (noting consensus that the ADA Amendments are not applied retroactively). Thus, given the fact that Rivera resigned by September 17, 2008, Sutton still governs this case.

Thus, at most, the record shows that Rivera had a restriction that limited her ability to perform any job explicitly requiring her hair to be tied back tightly. The record does not establish, however, that Rivera was precluded from a class of jobs or a broad range of jobs in various classes. Rivera has not presented any evidence as to how she was precluded from anything but this particular job at the MCCF. Rivera argues that a genuine issue of material fact is necessarily raised as to whether she was precluded from a broad range by Dr. Brown's opinion that Rivera's impairment impacts a major life activity. (Pl.'s Br. Opp. at 11 (Doc. 21) (citing Physician's Medical Review Question #4 (Doc. 20-2 at 230)).[3] Dr. Brown identified the impacted life activities as "severe headaches and nausea impact work activities of daily living etc." (Doc. 20-2 at 231). This medical opinion, valid as it may be, does not take Rivera's claim any further down the road of analysis however. The question is whether Rivera was precluded from a range of jobs, given her skills and training. Rivera has presented no evidence that she would be foreclosed from other jobs within the corrections sector, or even from other jobs at the MCCF that did not require her to be in contact with prisoners. Rivera has not presented any evidence that there are no other correctional institutions or, perhaps, law enforcement positions within the immediate geographical area which have more relaxed hair policies. Accordingly, Rivera

---

[3] The Physician's Medical Review form asks the doctor indicate whether Rivera's impairment impacts a major life activity, and elaborates:
> In answering this question, you should understand that the law defines major life activities as the basic activities that the average person in the general population can perform with little or no difficulty, such as caring for oneself, performing manual tasks, walking, seeing, speaking, breathing, learning, sitting, standing, lifting and reaching. This list of examples is not necessarily exhaustive.

(Physician's Medical Review Question #4 (Doc. 20-2 at 230)).

9

has not met her burden at the summary judgment stage and her claim for disability discrimination will be dismissed.

Rivera also claims that she is properly considered disabled because Monroe County regarded her as having a physical impairment that substantially limits one or more major life activities. "[A] person is 'regarded as' disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." Murphy, 527 U.S. at 521-22. To make out such a claim, Rivera must show "either: (i) that despite having no impairment at all, [the MCCF] erroneously believed that [she] had an impairment that substantially limited one or more of [her] major life activities; or (ii) that [she] had a non-limiting impairment that [the MCCF] mistakenly believed substantially limited one or more of [her] major life activities." Eshelman v. Agere Syss. Inc., 554 F.3d 426, 434 (3d Cir. 2009) (citing Tice v. Ctr. Area Transp. Auth., 247 F.3d 506, 514 (3d Cir.2001); Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999)).

The record presents no genuine issue of material fact as to whether the MCCF believed Rivera had an impairment that substantially limited her in the major life activity of working. Though the MCCF did allow Rivera to work with her hair tied loosely for some time, that alone does not establish that the MCCF believed, in fact, that Rivera was substantially limited in her ability to work. Were the court to find that an employer who affirmatively grants an accommodation has necessarily regarded the employee as disabled under the ADA, employers would be discouraged from granting accommodations unless absolutely legally required. Beyond the prior accommodation, Rivera has presented no evidence from which a reasonable jury could conclude that the MCCF considered Rivera to be disabled. Further, the fact that the MCCF requested an additional certification indicates that the MCCF did not believe

that Rivera was, in fact, substantially limited in the major life activity of working. Thus, the defendants' motion for summary judgment will be granted on Count I of Rivera's amended complaint.

**Count II: Title VII Civil Rights Claim for Sexual Harassment based on Hostile Work Environment against Monroe County**

Rivera claims that Monroe County violated Title VII of the Civil Rights Act of 1964 by creating a hostile work environment. Under Title VII, it is "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . ." 42 U.S.C. § 2000e-2(a)(1).

One means of proving a violation of Title VII is to show that sexual harassment created a hostile work environment. Kunin v. Sears Roebuck and Co., 175 F.3d 289, 293 (3d Cir. 1999). The elements of a hostile work environment claim against an employer are: "(1) the employee suffered intentional discrimination because [her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability." Hutson v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009) (quoting Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001); Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990)). In this context, the fifth element– *respondeat superior* liability– means notice to the employer, not vicarious liability. Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 n.5 (3d Cir. 1999).

To establish a hostile work environment claim, "the offending behavior 'must be sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment.'" Pennsylvania State Police v. Suders, 542 U.S. 129, 146-47 (2004) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).  Finally, "[a] hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." Id. at 147.

The basis of Rivera's claim is that she was directed by her male supervisor to conduct a pat-down search upon him.  The record establishes that cross-gender searches were unprecedented at the MCCF.  Rivera heard co-workers making demeaning comments during the training session and felt humiliated.  She complained afterwards to her sergeant and tried to meet with the warden, unsuccessfully.  The record also establishes that other female COs were required to engage in similar training.  Finally, Rivera's resignation letter alludes to unspecified circumstances dictating her departure.

Totaling these facts, and even assuming a discriminatory intent on the part of her supervisor for the purpose of argument, Rivera has failed to establish a genuine issue of fact as to whether the assumed discrimination was regular and pervasive.  Rivera has established that a single training incident occurred, but has not alleged any other discriminatory instances which might support her hostile work environment claim.  Accordingly, there is no question of fact as to whether Rivera experienced pervasive harassment or faced an intolerable workplace.  Thus, Rivera's claim for hostile work environment constructive discharge under Title VII will be dismissed.

**Count III: Section 1983 claim against Owen Thomas[4]**

---

[4] Rivera brings this claim against Thomas in both his individual and official capacities.  The court notes that Rivera has also made a claim under section 1983 against Thomas's employer– Monroe County.  "[O]fficial-

Rivera claims that Thomas's alleged sexual harassment violated her rights under the Equal Protection Clause of the Fourteenth Amendment.[5] Section 1983 does not, by its own terms, create substantive rights. Rather, it provides remedies for deprivations of rights established elsewhere in the Constitution or federal law. United States v. Kneipp, 95 F.3d 1199, 1204 (3d Cir. 1996). In pertinent part, section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Thus, to establish a claim under section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under color of state law. Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law. Sameric Corp. of

---

capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. . . ." Monell v. Dep't. of Soc. Serv., 436 U.S. 658, 691 n.55 (1978). Such a suit is properly treated as a suit against the entity. Kentucky v. Graham, 473 U.S. 159, 166, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under Monell . . . local government units can be sued directly for damages and injunctive or declaratory relief."). Accordingly, the court will dismiss the official capacity claim against Thomas.

[5] Rivera's complaint alternatively bases her section 1983 claim on a hostile work environment and on sexual harassment. Since we dismiss her claim for hostile work environment under Title VII, no such claim can lie under section 1983. See Young v. Pleasant Valley School Dist., 2010 WL 55711, *13 (M.D. Pa. Jan. 4, 2010) (finding that a hostile work environment claim brought under section 1983 is analyzed as it would be under Title VII). Therefore, the court will analyze her 1983 claim under a theory of sexual harassment.

13

Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 590 (3d Cir. 1998). There is no dispute that Thomas, as the Chief of Security at the MCCF, was operating under color of state law. The only issue is whether he deprived Rivera of rights secured by the Constitution or federal law.

Rivera claims that Thomas violated her rights under the Equal Protection Clause of the Fourteenth Amendment. "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination. They must demonstrate that they receiv[ed] different treatment from that received by other individuals similarly situated. Specifically to prove sexual discrimination, a plaintiff must show that any disparate treatment was based upon her gender." Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990) (internal quotations and citations omitted).

Applying the law to the facts of this case, Rivera has not presented a genuine issue of material fact as to whether Thomas discriminated against her based on her gender. The record indicates that all COs were directed to participate in a training scenario where Thomas acted as the subject of a pat-down search. While the facts show that cross-gender searches had not been performed at the MCCF prior to this occasion, there are no facts indicating purposeful discrimination on the part of Thomas. Rather, the record shows that all COs, regardless of gender, performed pat-down searches on his person.

**Count IV: Section 1983 claim against Monroe County**

Rivera also claims that Thomas's actions constituted a custom or policy of sexual harassment, subjecting Monroe County to liability. Municipal liability under 42 U.S.C. § 1983 is available only under certain circumstances. The standard, first articulated in Monell, provides that "local governing bodies . . . can be sued directly under §1983 . . . where . . . the action that is alleged to

be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690. Thus, "[a] public entity . . . may be held liable for the violation of a constitutional right under 42 U.S.C. § 1983 only when the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy." Reitz v. County of Bucks, 125 F.3d 139, 144 (3d Cir. 1997). Because we have found, above, that Thomas's actions did not violate Rivera's constitutional right to equal protection, there can be no liability imposed on Monroe County for his actions. Accordingly, summary judgment will be granted in favor of the county on this claim.

**CONCLUSION**

For the reasons stated above, summary judgment will be granted on Counts I through IV of Rivera's complaint. The defendants have not moved for summary judgment on Count V– Rivera's section 1983 claim alleging that Monroe County violated her First Amendment rights. This claim will proceed to trial. An appropriate order follows.

15

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WANDA RIVERA, | : | 3:09cv1558 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| COUNTY OF MONROE (Monroe County Correctional Facility) and OWEN THOMAS, Individually and as Captain, Monroe County Correctional Facility, | : | |
| Defendants | : | |

## ORDER

**AND NOW**, to wit, this __29th__ day of October 2010, upon consideration of defendants' motion for summary judgment (Doc. 16), it is HEREBY **ORDERED** that the motion is **GRANTED**. The following claims are **DISMISSED** from the case:

- Count I against Monroe County under the Americans with Disabilities Act,
- Count II against Monroe County under Title VII of the Civil Rights Act,
- Count III against Owen Thomas in his individual and official capacities under 42 U.S.C. § 1983,
- Count IV against Monroe County under 42 U.S.C. § 1983.

Plaintiff Rivera's remaining claim against Monroe County, under 42 U.S.C. § 1983 for violation of her First Amendment rights (Count V) remains for trial.

The Clerk of Court is directed to dismiss Defendant Owen Thomas from the case.

**BY THE COURT:**

 s/ James M. Munley

**JUDGE JAMES M. MUNLEY**
**United States District Court**